FILED

08/20/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 30, 2019

**STATE OF TENNESSEE v. MIMI BARRETT**

**Appeal from the Criminal Court for Sullivan County**
**No. S66030   James F. Goodwin, Jr., Judge**

———————————————————

**No. E2018-01643-CCA-R3-CD**

———————————————————

Mimi Barrett, Defendant, pled guilty to three counts of sale of a Schedule III controlled substance within a drug-free zone (counts one, three, and five), three counts of delivery of a Schedule III controlled substance within a drug-free zone (counts two, four, and six), and one count of maintaining a dwelling where a controlled substance was kept or sold (count seven).  The trial court ordered Defendant to serve concurrent sentences of two years in the Tennessee Department of Correction for each conviction.  On appeal, Defendant argues that the trial court erred by ordering her to serve her sentence in the Tennessee Department of Correction because the trial court incorrectly determined that her convictions under the Drug-Free School Zone Act ("DFSZ Act") made her ineligible for community corrections.  After a thorough review of the facts and applicable case law, we conclude that the trial court properly denied community corrections on the ground that Defendant was convicted under the Drug-Free School Zone Act.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

William Kennedy, Blountville, Tennessee, for the appellant, Mimi Barrett.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Peter Filetti, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### Factual and Procedural Background

On January 27, 2016, the Sullivan County Grand Jury indicted Defendant and Co-defendant, Robert Diggs, with three counts of sale of a Schedule III controlled substance within a drug-free zone (counts one, three, and five), three counts of delivery of a Schedule III controlled substance within a drug-free zone (counts two, four, and six), and one count of maintaining a dwelling where a controlled substance was kept or sold (count seven).

On February 2, 2018, Defendant entered an open guilty plea to all seven counts of the indictment with Defendant applying for judicial diversion. Under the terms of the plea agreement, count two merged with count one, count four merged with count three, and count six merged with count five. The trial court accepted Defendant's guilty plea and scheduled a sentencing hearing.

On August 24, 2018, the trial court held a sentencing hearing. Defendant testified that she lived with Co-defendant Diggs and his minor son. She explained that she received disability payments for a mental disability from PTSD and anxiety. Defendant testified that she regretted her actions that were the basis of the current offenses and that she was "really scared" about the prospect of receiving a sentence of confinement. She stated that, if the trial court ordered her to serve her sentence on community corrections, she would be able to complete the requirements of the program.

On cross-examination, Defendant agreed that she received judicial diversion for a theft conviction in 2013. She also agreed that she violated the terms of her probation for that conviction, and the trial court revoked her diversion. Defendant asserted that she completed other sentencing requirements for her previous theft conviction. She agreed that she was still serving a probated sentence for the prior theft conviction. The trial court deferred from announcing its ruling until a later hearing.

On August 31, 2018, the trial court addressed the factors set out in *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998), and concluded that in Defendant's case, the factors supported the denial of judicial diversion. The trial court also addressed whether Defendant was eligible to serve her sentence on community corrections:

> Now, we turn to community corrections and there's no doubt that the 2009 case of *State v. Johnson* says that if a person is eligible under 40-36-106(a) which means that basically it's a person who without this option would be incarcerated in a correctional institution; (b) persons who are

convicted of property related or drug and alcohol related felony offenses or other felony offenses not involving crimes against a person, persons who are convicted of nonviolent felonies, persons convicted of felony offenses for the use or possession of a weapon was not involved and persons who do not demonstrate a past or present pattern of behavior indicating violence, persons who do not demonstrate a pattern of committing violence, then they would be an eligible person for community corrections under 40-36-106(a), and the *Johnson* case stands for the proposition that you do not have to be eligible for probation in order to qualify for community corrections under that subpart of that statute. They do say that to come in under special needs, which is 40-36-106(c) that you must first be eligible for regular probation, so that's what the *Johnson* case stands for.

In *State v. Dycus* the Tennessee Supreme Court from October ---- well, in a January 23rd, 2015 opinion in determining whether or not the mandatory minimum service requirement of the drug-free school zone act rendered offenses under the act ineligible for judicial diversion. Well, that was the question and on page ---- well, I'm going to say page 9 of the Lex[i]s printout of that case which would have been page 925 of the actual reported opinion. The Supreme Court, who was it, Chief Justice Jeffrey Bivins authored the opinion, says on page 925, "With the mandatory minimum service provision of the drug-free school zone act the general assembly has declared specifically and [unambiguously] that defendants being sentenced for committing drug offenses in a school zone shall serve the entire minimum term of years in the defendant's sentencing range.["] . . . "Accordingly we have held that defendants sentenced under the act to the minimum term in their sentencing range will serve literally 100% of their sentences without the benefit of parole or sentence reduction credits. Likewise a defendant sentenced under the act required to serve the entire term of the applicable minimum sentence clearly would be ineligible for alternative sentences in lieu of confinement such as probation or community corrections." And under the community corrections the statutes listed are 40-36-106 and 40-36-104(c). Then they distinguish judicial diversion because ---- when you boil it all down it's because there's no ---- because the statute says sentenced under this act and in diversion cases you're not sentenced. So you wouldn't be sentenced under the act but that's how they ultimately arrive at their conclusion that diversion cases are still applicable in the drug-free school zone act counts, so *Dycus* appears to conflict with counsel. The holding in *Johnson* is what it says. What I just

read in *Dycus* is obviously (inaudible)[1] because they weren't actually addressing whether someone was eligible for community corrections with regard to the drug-free school zone act. However, that (inaudible) is a Tennessee Supreme Court opinion. This Court finds that because [Defendant] is being sentenced under the Tennessee drug-free school zone act that she would not be eligible for probation or community corrections.

The trial court stated that it reviewed the presentence report and the evidence introduced at the sentencing hearings. The trial court ordered Defendant to serve a sentence of two years each for counts one, three, five, and seven, noting that counts two, four, and six had merged. The trial court ordered the sentences to run concurrently with each other. Lastly, the trial court denied community corrections and ordered Defendant to serve her sentence in the Tennessee Department of Correction. Thus, Defendant received a total effective sentence of two years to serve in the Tennessee Department of Correction.

Defendant now timely appeals the trial court's decision.[2]

## Analysis

On appeal, Defendant contends that the trial court incorrectly applied dictum from *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015), and abused its discretion by denying Defendant's request to receive community corrections. Defendant notes that the DFSZ Act was enacted after the community corrections statute was enacted. Thus, Defendant asserts that the Tennessee General Assembly would have included in the plain language of the DFSZ Act that individuals convicted under the Act are not eligible for community corrections if the legislature had intended the two statutes to be interpreted in that manner. The State responds that the Tennessee Supreme Court has interpreted the DFSZ Act as requiring mandatory incarceration in *Dycus*, 456 S.W.3d at 925, and *Davis v. State*, 313 S.W.3d 751, 764 (Tenn. 2010). Additionally, the State argues that the phrase "to serve" in section 39-17-432(c) "implicitly" means that defendants convicted of violating the DFSZ Act are not eligible for community corrections.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of

---

[1] Defendant asserts that the inaudible word was "dictum[.]"

[2] Defendant's notice of appeal was filed prematurely, but pursuant to Tennessee Rule of Appellate Procedure 4(d) we will treat it as filed after the judgments were entered. *See State v. Jason Peter Meeks*, No. M2011-01134-CCA-R3-CD, 2012 WL 3085563, at *1 n.1 (Tenn. Crim. App. July 31, 2012), *no perm. app. filed*.

discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2018); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2018), Sentencing Comm'n Cmts.

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1) (2018). Eligible offenders under the Community Corrections Act include: "[p]ersons who, without this option, would be incarcerated in a correctional institution"; "[p]ersons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5"; "[p]ersons who are convicted of nonviolent felony offenses"; "[p]ersons who are convicted of felony offenses in which the use or possession of a weapon was not involved"; "[p]ersons who do not demonstrate a present or past pattern of behavior indicating violence"; and "[p]ersons who do not demonstrate a pattern of committing violent offenses." *Id.* § 40-36-106(a)(1)(A)-(F) (2018).

Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." Tenn. Code Ann. § 40-36-106(d) (2018).

An individual violates the DFSZ Act by knowingly selling or delivering a controlled substance "within one thousand feet (1,000') of the real property that comprises a . . . recreational center or park[.]" Tenn. Code Ann. § 39-17-432(b)(1) (2015).

> Notwithstanding any other law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of [the DFSZ Act] shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence. Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

Tenn. Code Ann. § 39-17-432(c) (2015). In *Davis*, the Tennessee Supreme Court stated that "defendants dealing drugs in school zones who are sentenced to the minimum term in their sentencing range will serve literally 100% of their sentences." 313 S.W.3d at 764.

In *Dycus*, the supreme court considered "whether the mandatory minimum service requirement of . . . []the [DFSZ Act] renders offenses under that act ineligible for judicial diversion." 456 S.W.3d at 920. The Tennessee Supreme Court stated that, similar to the fact that defendants sentenced under the DFSZ Act do not receive sentence reduction credits, "a defendant sentenced under the Act, required to serve the entire term of the applicable minimum sentence, clearly would be ineligible for alternative sentences in lieu of confinement such as probation[] . . . or community corrections[.]" *Id*. at 925. The court then discussed the interaction between judicial diversion and the DFSZ Act and held that "the mandatory minimum service provision of the Drug-Free School Zone Act does not render offenses committed under the Act ineligible for judicial diversion." *Id*. at 929.

Turning to cases decided by this court that discuss the DFSZ Act as applied to alternative sentencing, in *State v. Jeffrey B. Lindemeyer*, No. 03C01-9808-CR-00284, 1999 WL 826026, at \*1 (Tenn. Crim. App. Oct. 18, 1999), *perm. app. denied* (Tenn. Apr. 17, 2000), this court affirmed the trial court's determination that the defendant was not eligible for community corrections because the DFSZ Act "required incarceration for at least the minimum sentence[.]" Specifically, this court addressed the issue of whether the phrase "to serve at least the minimum for [his] appropriate range of sentence" requires mandatory incarceration. *Id.* at \*3. This court stated:

> Read as a whole, the fair import of the School Zone Act is a legislative goal of deterrence through guarantee of minimum incarceration terms for the qualifying offenses. After creating a distinct subdivision of offenders based on specific illicit activity, the School Zone Act both raises the offense classification by one grade, and thereby the minimum punishment range, and requires the trial court's imposing at least the minimum sentence. The School Zone Act then retracts some discretion generally granted a trial court in sentencing matters: A defendant must serve his minimum sentence "[n]otwithstanding any . . . . sentence imposed by the court to the contrary." Tenn. Code Ann. § 39-17-432(c). We read the subsequent proscriptions against avoiding the minimum sentence by the enumerated means as emphasizing the required service of a mandatory incarceration, rather than as impliedly carving out an exception to the rule by omission. The overall statute speaks for a mandatory incarceration.

- 6 -

*Id.* at \*4.  This court concluded that "that the General Assembly intended that the School Zone Act achieve more than a 'minimum sentence,' because the Code already provides minimum sentences for felony offenses."  *Id.*

In *State v. Charles Orlando Fields*, the defendant argued that the trial court imposed an excessive sentence by denying community corrections for his convictions of "selling one-half gram or more of cocaine within one thousand feet of a school, a Class A felony, and one count of distributing one-half gram or more of cocaine within one thousand feet of a school, a Class A felony."  W2001-00124-CCA-R3-CD, 2002 WL 1558575, at \*1 (Tenn. Crim. App. Jan. 2, 2002), *perm. app. denied* (Tenn. May 28, 2002).  This court applied a presumption of correctness to the trial court's sentencing determination and affirmed the sentence because the trial court "imposed the sentence in conformity with the sentencing laws."  *Id.* at \*7.

We rely on this court's previous decision in *Jeffrey B. Lindemeyer* for instruction in this case.  We conclude that the trial court did not abuse its discretion by denying community corrections on the grounds that Defendant had been convicted under the DFSZ Act.  Because previous panels of this court have concluded that a defendant convicted of violating the DFSZ Act must serve the sentence in confinement, the trial court properly applied precedent to Defendant's case.  Defendant is not entitled to relief on this ground.

Here, Defendant received a sentence of two years for each conviction.  Selling or delivering a Schedule III controlled substance is a Class D felony, *see* Tenn. Code Ann. § 39-17-417(d)(1) (2015), and a Range I sentence for a standard offender is between two and four years.  *See* Tenn. Code Ann. § 40-35-112(a)(4) (2018).  Similarly, maintaining a dwelling where a controlled substance was kept or sold is a Class D felony.  *See* Tenn. Code Ann. § 53-11-401 (2015).  Because Defendant's sentences were within the appropriate range, the trial court's sentencing determinations are entitled to a presumption of reasonableness, and we will not reverse absent an abuse of discretion.  As we have previously concluded, the trial court did not err in denying community corrections on the ground that Defendant was convicted under the DFSZ Act.  Therefore, the trial court did not abuse its discretion by ordering Defendant to serve her total effective sentence of two years in confinement.

## Conclusion

After reviewing the facts and applicable case law, we affirm the trial court's denial of community corrections.

 

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 7 -